UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORA DUTKA, AS GUARDIAN FOR THE ESTATE OF J.M., A MINOR, and THE ESTATE OF T.M., A MINOR, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:07-cv-4316 |
| AIG LIFE INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff and Defendant have each filed motions for summary judgment. (Doc. Nos. 20 & 39, respectively.) The underlying issue is whether Plaintiff is entitled to the proceeds of the insurance due on the life of her former husband, who was also the father of the two minors on whose behalf Plaintiff sues. For the reasons that follow, Plaintiff's Motion must be **DENIED** and Defendant's **GRANTED**.

I.  HISTORY

The following facts are uncontested.

Decedent Istvan Macsai ("Decedent") was, at the time of his death, an employee of Continental Airlines and enrolled in the Continental accidental death and dismemberment benefit plan (the "Plan") issued by Defendant, in a principal amount of $500,000. The Plan provides coverage for certain losses; the terms of coverage appear in the governing policy of insurance (the "Policy"). (*See* App. to Def.'s Mot. Summ. J.,

Doc. No. 39, at AIG0274-324.) Decedent's two minor children were the beneficiaries of the Policy. On September 15, 2005, Decedent and two passengers were killed when an airplane he was piloting crashed. There were no surviving witnesses to the accident. The parties agree that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et. seq.*, governs the Plan.

Plaintiff subsequently made a claim for benefits on behalf of the minor beneficiaries. One of Defendant's employees later informed Plaintiff's counsel that she was recommending denial of the claim. Plaintiff sought review of the original claim denial, but another of Defendant's employees adhered to the original denial. Plaintiff then sought an administrative review (also called an "administrative appeal"), which was performed by the "ERISA Appeals Committee of AIG Life Insurance Company." The denial was maintained. (App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0011-12.) Plaintiff later filed this proceeding.

The dispute between the parties centers on the Policy's exclusions. In particular, the Policy provides that it "does not cover any loss caused in whole or in part by, or resulting in whole or in part from, the following: . . . 5. the Insured Person being under the influence of drugs or intoxicants, unless taken under the advice of a Physician . . . ." (App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0323.) The parties disagree as to whether Decedent can be said to have been "under the influence of drugs or intoxicants" at the time of the crash, whether any such influence caused the crash, and whether AIG's denial of Plaintiff's claim should be reviewed under an abuse of discretion, or other, standard of review.

II.   **SUMMARY JUDGMENT STANDARD**

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (*quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Cross motions for summary judgment do not alter the basic Rule 56 standard; instead the Court must determine whether either of the parties deserves judgment on the facts that are not disputed.

A further qualification must be noted as to cases, like this one, that are to be tried to the Court without a jury. The Fifth Circuit has held that

> [A] court in a non-jury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions. But summary judgment is not appropriate if the same case is to be tried to a jury, and the inferences and conclusions to be drawn are genuinely disputed. To put it in another fashion, whether disputed issues are issues of 'fact' for purposes of Rule 56 depends not only on the state of the evidence and the nature of the issues but hinges also on whether the litigants have a right to a jury determination.

*Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ; *see also, e.g., USF&G v. Planter's Bank & Trust Co.*, 77 F.3d 863, 865-66 & n. 1 (5th Cir. 1996); *Matter of Placid Oil Co.*, 932 F.2d 394, 397-98 (5th Cir. 1991).

### III. THE EVIDENCE

Following its investigation into the crash, the National Transportation and Safety Board ("NTSB") reported in April 2006 that pilot error had been the cause. (App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0069-72, AIG0128-29.) The NTSB determined that Decedent failed to maintain airspeed, resulting in a stall or spin. Low altitude was also cited as a contributing cause of the crash. Neither weather nor poor visibility contributed to the crash, and there was no sign of mechanical malfunction.

Prior to the NTSB report, the Civil Aeromedical Institute Forensic Center of the Federal Aviation Administration issued a Final Forensic Toxicology Fatal Accident Report. (App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0130-31.) The report noted that no cocaine was found in Decedent's blood, but cocaine was detected in Decedent's urine, and propoxyphene (marketed as "Darvon") was found in both Decedent's blood and urine. Alcohol was not detected.

After Plaintiff submitted her claim for accidental death benefits, Defendant forwarded the claim documentation to Dr. Gary L. Lage, an expert in forensic toxicology. There does not appear to be any dispute as to Dr. Lage's qualifications to serve as an expert in this capacity. Dr. Lage opined to a "reasonable degree of scientific certainty, that [Decedent] had recently illegally used cocaine, had used alcohol, and had taken the prescription drug propoxyphene within a few hours of his death; however, it is not clear if this drug was prescribed." (App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0078, AIG0101, AIG0136.)[1] Defendant subsequently checked with fifteen drug stores near Decedent's residence and found no evidence that the drug had been prescribed. (App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0016-21.) More importantly, Plaintiff has not come forward with any such evidence. (*See* App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0062.)

Dr. Lage went on to explain that he felt ingestion of cocaine and propoxyphene was inconsistent with the safe operation of an aircraft. (App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0078.) Although the amount of propoxyphene found was not inconsistent with that which would normally be prescribed, Dr. Lage felt that the drug might have had effects more severe in someone who did not regularly take the medicine than those that would have been experienced by a person who had regularly used the drug pursuant to a prescription. (App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0077-78.) Dr. Lage also opined that, even when blood is properly preserved, signs of cocaine in

---

[1] The Court notes that, in contrast to the Final Forensic Toxicology Fatal Accident Report, Dr. Lage's report concludes that Decedent "had used alcohol." Dr. Lage does not offer his reasons for this conclusion. Whether or not Decedent had used alcohol, however, does not affect the Court's analysis in light of the evidence in the record showing Decedent had used cocaine and propoxyphene.

blood decrease over time, and that cocaine may have been in Decedent's blood at the time of the crash. (App. to Def.'s Mot. Summ. J., Doc. No. 39, at AIG0077.)

Unfortunately, Plaintiff did not submit an expert report to challenge or rebut Dr. Lage's findings and conclusions. Plaintiff does argue that no one who saw Decedent before the flight suggested he was anything other than fully capable; that Decedent exhibited highly cognitive behavior on the day of the crash by preparing, flying, and navigating an airplane to a specific area; that there is no evidence that Decedent ever had operated an aircraft, or even an automobile, while under the influence; that not even Defendant's expert claims that Decedent was intoxicated; and that there is no evidence that, even if Decedent had consumed propoxyphene or cocaine, it had anything to do with the aircraft's crash.

## IV. THE STANDARD OF REVIEW BY WHICH ALJ'S BENEFIT DETERMINATION IS TO BE REVIEWED

The parties disagree sharply as to which standard of review is applicable to ALJ's decision to deny Plaintiff's claim. Plaintiff, however, rests her argument on a decision by another Circuit's Court of Appeals. *Williams v. BellSouth Telecommunication*, 373 F.3d 1132, 1138 (11th Cir. 2004). Although the standard of review set forth in *Williams* may one day be the law in the Fifth Circuit, it is not at present.

In the Fifth Circuit, the standard of review for actions challenging benefits determinations depends on whether a court is asked to review an issue of plan interpretation or an administrator's factual determination. If the latter, the Fifth Circuit has held that the administrator's decision is entitled to deferential review regardless of

what other provisions are found in the plan at issue. *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1558, 1562 (5th Cir. 1991). ("We believe that an abuse of discretion standard best balances the need to respect the plan administrator's factual determinations and the need to protect beneficiaries by providing some judicial review of those decisions"). Accordingly, under this standard, the administrator's factual determinations are upheld unless the administrator acted arbitrarily or capriciously. *See Meditrust Fin. Servs. Corp. v. Sterling Chems.*, 168 F.3d 211, 213-14 (5th Cir. 1999). In *Meditrust* as in this case, the issue was how to apply a plan term to specific conduct.

There is no obligation on the part of the administrator to conduct any investigation beyond reviewing the documents that a claimant has submitted. *Vega v. Nat. Life Ins. Servs., Inc.*, 188 F.3d 287, 298-99 (5th Cir. 1999) (en banc). The administrator's decision is not to be overturned "if a reasonable person could have reached a similar decision, given the evidence before him." *McCall v. Burlington Northern/Santa Fe Co.*, 237 F.3d 506, 512 (5th Cir. 2000).

Plaintiff also urges that a different standard of review should apply because Defendant had a conflict of interest in that the administrator worked for the entity that would have to pay the claim if approved. The Fifth Circuit has confronted this question and adhered to the abuse of discretion standard, but with a "sliding scale" that adjusts with the severity of the conflict. *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 270 (5th Cir. 2005) (*citing Vega*, 188 F.3d at 297). Plaintiff has adduced no evidence that a conflict of interest caused Defendant to reach a different decision than would have been reached by a fully independent administrator.

## V.     CONCLUSION

Although denying benefits to minor beneficiaries is never easy, the record in this case admits of no other decision. There is no dispute that cocaine and a prescription drug for which Decedent apparently had no prescription were found in Decedent's system. Plaintiff offered no expert report to counter that of Defendant. The language of the exclusion did not refer to "intoxication," only "under the influence." There is no proof that the drugs in Decedent's system were a cause of the fatal crash, but the administrator's conclusion that they were is not unreasonable in light of the uncontroverted evidence.

Plaintiff's Motion for Summary Judgment (Doc. No. 20) is **DENIED.** Defendant's Motion for Summary Judgment (Doc. No. 39) is **GRANTED.** This case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

**SIGNED** this 14th day of July, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT